Oscar Murov, J.
This is an application denominated as motion to have case reassigned which has been referred to the undersigned by the Hon. Frank L. Gates, Administrative Judge of the County Court, Suffolk County, for decision thereon. The notice of -motion prays for an order removing this case from a list of cases assigned to this court and reassigning the matter to any . other Judge of the County Court. In effect, the motion seeks the disqualification of the court to preside in the trial of defendant, Mary Wallace, also known as Mary Mills.
Counsel couples to this request his application for leave to withdraw as assigned counsel. This court has not been designated as the Judge to assign or reassign matters and, therefore, treats the within motion, consistent with its purpose, as a motion for disqualification.
It is counsel’s contention that this court is "incapable of rendering a 'fair’ trial on all the issues involved in this case” based upon counsel’s recollection of incidents precipitating this motion.
The court sets forth below the pertinent paragraphs of counsel’s affidavit which reflect the thrust of this motion along with any court response deemed necessary and appropriate.
"4.A.i. In January of 1972, a Sunday morning, a client of *621 the undersigned was arrested. After the client was 'booked’ and processed at the Huntington Precinct of the Suffolk County Police Department, I was advised by the police that they could transport the prisoner to Hauppauge (District Court) for arraignment if they received a call from the court to do so.
"ii. Your deponent went to the First District Court in Hauppauge and requested to see Judge Murov. I was ushered into Judge Murov’s chambers at approximately 11:10-11:15 a.m. and requested that the prisoner be brought to court to be arraigned. At that time there were a number of persons in the Judge’s chambers, including an Assistant District Attorney, the court stenographer and several court officers.
''iii. Mr. Justice Oscar Murov refused my request with the explanation that he was only required to be present for arraignments until 11:00 a.m. When I pressed him to arraign this particular defendant and thereby prevent his spending an additional 24 hours in custody, he advised me that if my client had not stolen the property in question (the charge was one of Grand Larceny) he would not have been arrested; and in addition he advised me that this was 'Super-Bowl Sunday’ and that both he and the court personnel was entitled to some relaxation. When I advised Mr. Justice Murov that the game was not scheduled to begin for several hours and that the prisoner could be brought to the court within 15 minutes, he indicated firmly that under no circumstances would he arraign the prisoner on that date. That prisoner was subsequently released approximately 24 hours later on his own recognizance.”
The court would acknowledge that little, indeed, is remembered concerning the January, 1972 incident other than that the court acted in compliance with a policy established by the Administrative Judge of the Suffolk County District Court which foreclosed the taking of arraignments after 11:00 a.m. on Sundays in all but exceptional cases. The court has no independent recollection of the colloquy reported by counsel in subdivision iii above, and would merely add that it was at that time incumbent upon the court, and the practice of the court, to remain on standby in chambers long after the 11:00 a.m. arraignment deadline. I do not remember advising counsel that his client would not have been arrested had he not stolen property, nor can I conceive of myself saying such a thing. I would further add that my interest in sports, and football in *622 particular, is not of such a compelling nature that it takes precedence over the performance of my duties. I recognize these latter remarks to be self-serving but regard it as incumbent upon myself to unequivocally condemn conduct such as that described in counsel’s affidavit.
It is submitted that counsel failed at that time to satisfy the court that there was good and sufficient cause to depart from the established policy of the District Court. It must be contemplated that the reasons for a departure from policy set forth herein are the product of years of unhurried and well considered reflection. If the good cause shown by counsel in January, 1972 was no better than this, then, in the opinion of the court the determination made by me in 1972 was entirely proper.
Counsel’s affidavit continues: "4. B. This incident and another where an associate of my firm was kept waiting unnecessarily in District Court in Babylon for IV2 hours by Judge Murov, was the subject of a letter of complaint to the Administrative Judge of the District Court.”
The second "incidents” referred to by counsel are vividly remembered and, as remembered, are recorded in a written report requested of me by the Administrative Judge of the District Court in response to a letter written by counsel’s associate to the District Court Committee of the Suffolk County Bar Association and forwarded in turn to Judge Mauceri. Suffice it to say that the response apparently satisfied both the Committee and the Judge since there were no further developments arising out of the "incidents”.
"4. C. When the above case was assigned to Judge Murov for trial purposes, your deponent attempted to have this matter assigned to any other trial judge in County Court. I wrote to the Administrative Judge of the County Court, Judge Frank Gates, and was advised that Judge Murov had been consulted and felt he could be fair and therefore Judge Gates would decline to act on my request unless a motion to that effect was formally made on written affidavits.
"4. D. i. When I most recently spoke with Judge Murov regarding his possible removal from this case, he immediately began by verbally excoriating my partner, stating that my partner was 'out to get him’. He then began reciting an incident that took place some 15 or more years ago. When I advised him that I was there regarding his conduct on a matter that I had participated in, he made several inquiries regarding the same. When I reviewed with him the arraign *623 ment incident referred to above, his only comment was that he did not recall it.
"4. D. ii. However, during the course of that conversation, Judge Murov did indicate to me that he was most concerned with his reputation — that he did not wish to be thought of as someone whose integrity could be questioned, and further that he was thinking of looking into the possibility of taking 'legal action’ if my office persisted in its attempts to have him removed from this case — a remark that could only be considered as a threat under the circumstances. In addition, Judge Murov further expressed displeasure at having to explain his actions previously to the Administrative Judge of District Court, Judge Angelo Mauceri, and to the Administrative Judge of County Court, Judge Frank Gates. Throughout this meeting, Judge Murov’s attitude was arrogant and overbearing. He felt more disturbed that his 'integrity was being question’ than that a defendant’s rights might be abridged by his conduct.
"5. Thereafter, your deponent spoke to the Administrative Judge of Suffolk County, Judge Arthur Cromarty. I was again advised that after consultation, Judge Murov had declined to relieve himself of this matter..
"6. It is only after the above informal efforts to have Judge Oscar Murov remove himself from this matter, that your deponent has resorted to this motion. It has always been your deponent’s feeling that these kinds of issues are best handled informally. However, Mr. Justice Oscar Murov, by declining to withdraw himself from the trial of this matter, has literally forced the making of the within motion.”
Although the precise chronology of recent events is of no great moment, it is the court’s recollection that counsel’s overtures to the Administrative Judge of Suffolk County, Mr. Justice Cromarty, preceded the informal request made in chambers.
The latter event, the discussion in chambers, took place with my law secretary present thereat on September 25, 1975 after the court had already recessed for lunch at 1:00 p.m. Counsel’s request for a conference was granted despite the fact that court was scheduled to reconvene at 2:00 p.m.
Counsel was once again advised that the court harbored no animosity towards counsel or the defendant. Counsel was told that the court had no past contacts of a personal nature with the defendant and that any ill feelings generated in the past *624 towards members of counsel’s firm were reserved solely for counsel’s associate.
It is a fact that the court has an intense dislike for Mr. McElligott’s partner and did not hesitate to indicate as much even when I appeared before the Judiciary Committee of the Suffolk County Bar Association which passed upon my qualifications to serve as County Judge. When asked by that distinguished body whether there were any complaints or disciplinary actions taken against me, I acknowledged that there was just one filed by counsel’s associate and that I could not understand his vindictiveness unless it was because I declined to employ him in my firm when I was in private practice. The above circumstances and incident were fully related to Mr. McElligott. I would further point out that the apprehensiveness I felt concerning counsel’s partner was a development of the incident arising in January, 1972, and not "15 or more years ago” as counsel has contended (par 4.D.L).
The court takes exception to counsel’s charge that my attitude at the meeting was "arrogant and overbearing”. Quite the contrary would be more the truth. It was Mr. McElligott who levelled an accusing finger at the court charging, "you did this to me”, "you did that to my partner” (quotes mine). It was Mr. McElligott who at first proceeded with the soft "informal” approach and then concluded with the veiled threat that he would be forced to proceed by formal motion, which might and should prove embarassing to the court, if I did not accede to the subtle demand that I recuse myself. It was only then that Mr. McElligott was advised to take any action he saw fit, and was incidentally advised that the court might explore the possibility of any appropriate counteraction to enjoin further harassment and intimidation. Parenthetically, the court has found itself far too busy with court business to give much thought to any possible affirmative action on its part and has further determined that counteraction would be inappropriate and demeaning to the court, both personally and its representative capacity.
The informal discussion was concluded at approximately 1:45 p.m., some 15 minutes before court was to reconvene. The court’s lunch that day, if any, was somewhat less than sumptuous.
The statutory grounds for a Judge’s disqualification are generally set forth in section 14 of the Judiciary Law. No statutory ground for disqualification is alleged herein, rather *625 the facts, as they are set forth in counsel’s affidavit, establish "bias or prejudice” as grounds for the motion.
The principle is well-established that both the People and the defendant are entitled to an unbiased, unprejudiced and unpressured finder of facts in a criminal case. (People v Kessler, 77 Misc 2d 640; People v Barr, 64 Misc 2d 94; People v Graydon, 59 Misc 2d 330.) In adopting this principle the court sets aside, for the purpose of this motion, that ruleTaid down in People v Owen (205 Misc 415, 418) which stated: "(i)n the absence of express statutory provisions, bias or prejudice or unworthy motives on the part of a judge, unconnected with an interest in the controversy, was not grounds for disqualification.” (See also 32 NY Jur, Judges, § 52.)
Although the posture of the Owen court has never been challenged in a decision of any appellate tribunal and substantially sustained in People v Capuano (68 Misc 2d 481), this writer could not in good conscience continue to sit in an action while entertaining "unworthy motives”. The presence of bias or prejudice on the part of a sitting Judge is at best a matter of discretionary disqualification. (Fitzgerald v Wells, 9 AD2d 812; People v Capuano, supra, p 486.)
The particular bias or prejudice alleged herein is that directed towards counsel for the defendant. The court initially denies the existence of any bias, prejudice or antipathy towards counsel. Certainly none existed prior to this application and the court regards counsel’s present efforts as nothing more than the tactical maneuverings of an overzealous advocate in an effort to obtain what he believes will be a better chance for his client. The prior incidents reported in counsel’s affidavit involving the court and himself left no lasting impression upon the court and remains as only a blur in the court’s memory. If anybody emerged piqued and chagrined from those previous encounters, it was Mr. McElligott. He so stated during our informal discussion and counsel so states in his affidavit.
Prior to ascending to the bench where I have served for 10 years, I was engaged in the practice of law in Suffolk County for 30 years. Oddly enough, in all that period, Mr. McElligott never tried a case before me nor did I ever have a matter with him while in private practice. Whatever contacts have been had.were of the most fleeting kind and no more intense than those had with any other attorneys.
Assuming, arguendo, that the court presently harbors hos *626 tile feelings towards counsel, does it follow that the court must be disqualified to act in this matter? No decision on this precise point rendered by any court within the State has been uncovered by the court’s research. The subject, however, is well documented in the American Law Reports (23 ALR3d 1416-1427). It would appear that courts throughout the land are not uniform in their views with respect to "bias against an attorney as grounds for disqualification”. In those jurisdictions where disqualification was favored, the general view was taken that bias or hostility on the part of a Judge toward counsel would have to be of such a degree as to prejudice the client.
Accordingly, bias and prejudice was held to be sufficient to warrant disqualification in a case where numerous motions to disqualify in separate matters were filed by the same attorney against the same Judge; where friction of a personal nature had developed between attorney and Judge; where animosity between attorney and Judge had developed to such an extent that the Judge had already taken steps to disqualify himself in all matters involving the attorney; where a mutual feeling of animus was known to exist between attorney and Judge; where the attorney was a member of a firm which brought about a bill of impeachment against the Judge and counsel’s adversary had appeared for the Judge at the impeachment trial; where the attorney who filed a suggestion of disqualification was thereafter cited by the Judge for contempt of court; and in a criminal action where a Judge, vexed by newspaper articles uncomplimentary to him, developed strong ill feelings towards the attorneys believing the articles were inspired by such attorneys.
The article references an equal number of cases at the very least, which oppose a view favoring disqualification of a Judge for bias or prejudice towards counsel. Most significant of those in the latter group is Shakin v Board of Med. Examiners (254 Cal App 2d 102, 118, 119) which exemplifies the views of this court and which stated: "(N)or can we so far impeach the sense of fairness and justice which it is presumed rests in the conscience of every judge as to say that, because the attorney has incorporated distasteful and even scandalous matter in a brief reflecting upon the judge, therefore the judge would punish the offense by mulcting the innocent client. If we must presume bias and prejudice toward the client because of ill-feeling toward the. attorney, it would establish a dangerous *627 rule by which the attorney, through his own fault, could have his case transferred to another judge by quarreling with the court. We prefer to believe that a judge may, with or without cause, cordially dislike and even distrust an attorney, and yet be capable of doing exact justice toward his client.”
This court fully endorses the view expressed by the California court. I possess no greater a desire to preside in the trial of a matter argued by Mr. McElligott than he possesses in appearing before me. We are both fortunate in that we are not required to extend reciprocal invitations to dinner in our respective homes. Yet I regard myself bound to sit as a judicial officer in the absence of some disqualifying reason (Matter of Mavroidi, 60 NYS2d 344, affd 270 App Div 920) and Mr. McElligott should, upon examination of the Code of Professional Responsibility, consider himself duty bound to continue in the representation of his client.
The court possesses no special preference for retaining this rather than any other matter assigned for trial in this part. Doubtless, my burdens as a Judge sitting in the Suffolk County Court would be considerably lightened were I to accede to counsel’s wishes. But counsel wants me disqualified upon the ground that I am biased and prejudiced and that is simply not the case. My situation is not unlike that of the Judge of the United States District Court who resisted his own disqualification with this observation: " 'Don’t take the case, Judge Lord, it’ll be hell,’ my advisers said. Here I stand today; my advisers were right.” (New York Times, Dec. 20, 1975, p 28.)
Judge-shopping as an obnoxious practice engaged in heretofore by both prosecuting and defense counsels has been ameliorated to some extent in Suffolk County by the implementation of a court-controlled calendar system. Prosecutors may no longer design to have particular matters tried before Judges of their own preference. Yet, the resourcefulness and imagination of counsel for the People, or for the defense, may compel him to contrive to try his case before the Judge he feels will give him the benefit of a doubt upon a ruling that could go either way. The courts should resist aiding such an endeavor. This is such a case.
I regard counsel’s machinations as a ploy to bait the court into self-disqualification. These waters are familiar to me and I know peril lurks behind every tempting morsel. I won’t take the bait.
*628 Counsel’s request for leave to withdraw as attorney for the defendant sets forth no reasons other than his own inaccurate assessment of the court’s ability to grant a fair trial. The court will neither impose a condition of involuntary servitude upon counsel nor judicially sanction withdrawal without good and sufficient cause. (Carter v Carter, 188 Misc 156.) Counsel’s declared hostility is not here regarded as such good cause.
Therefore, in accordance with the foregoing, it is the decision of this court that the motions herein for disqualification and for leave for counsel to withdraw as attorney for the defendant are denied with leave to counsel to renew the application to be relieved by setting forth, with clarity, good and sufficient cause for granting his requested relief.