Aaron WEISS et al., Plaintiffs,

v.

Michael K. FEIGENBAUM et al., Defendants.

No. CV-81-2666.

United States District Court, E.D. New York.

Dec. 7, 1982.

Paul E. Kerson, Kew Gardens, N.Y., Agostinho Dias Reis, Kresky, Sinawski & Hollenberg, Nicholas J. Miglino, Marc Crawford Leavitt, New York City, and James Evan Shaw, Philadelphia, Pa., for plaintiffs.

Robert Abrams, Atty. Gen. of State of N.Y. by Jeffrey I. Slonim, Asst. Atty. Gen., New York City, for defendants Calabretta, Gavrin & Fink.

Stroock & Stroock & Lavan by Charles Moerdler, New York City, Daniel Turbow, Brooklyn, for defendants Feigenbaum, Rubin, Goldstein, Brick, Wiseberg, Memmen, Orlow & Manes.

## MEMORANDUM AND ORDER

SIFTON, District Judge.

Plaintiffs, a candidate for NYC Councilmember-at-large from Queens County and his three principal campaign workers, commenced this action against eleven defendants in August 1981, charging them with "bringing and/or financing and/or judging or refereeing a New York State Supreme Court lawsuit, namely *Wiseberg v. Weiss*, Queens County Index No. 11189/81, a spurious effort to reverse the decision of the New York City Board of Elections in placing the name of Aaron Weiss upon the ballot in the September 10, 1981 Democratic primary for Councilman-at-large." Complaint ¶ 2. The activities of the defendant were alleged to constitute "gross violations of 18 [sic] U.S.C. 1983 and 1985 in that they have totally prevented plaintiff Aaron Weiss from conducting a political campaign in the best American tradition." Complaint ¶ 11.

In November 1981, plaintiffs filed an amended complaint naming twelve new defendants and asserting a class action on behalf of all supporters of the candidacy of plaintiff Weiss. The amended complaint alleges that "all Defendants ... participat[ed] in, as State or City government officials and/or in conspiracy with State or City government officials, a New York State Supreme Court lawsuit, *Wiseberg v. Weiss*, Queens County Index # 11189/81, in order to remove Plaintiff WEISS's name from the Democratic primary ballot for the New York City Councilmember-at-large from Queens County, all in violation of 42 U.S.C. §§ 1983 and 1985(1) and in violation of the equal protection and due process clause of the 14th Amendment to the U.S. Constitution, and in violation of the laws of the State of New York, Election Law

§ 17–152 and State Finance Law § 123–b." Amended Class Action Complaint, ¶ 34.

Defendants are specifically charged in the amended complaint with "violating Plaintiff WEISS's rights to be a candidate and with violating the voting rights of Plaintiffs SCHWALB, BLANK, BERSTEIN and others similarly situated," ¶ 35; with "subject[ing] [plaintiffs] to the deprivation of all of rights guaranteed by the First and Fourteenth Amendments to the Constitution of the United States and their privileges to run and campaign for public office," ¶ 44; with "conspir[ing] among themselves to prevent, by intimidation and threat, Plaintiff AARON WEISS from accepting, holding and seeking the office of New York City Councilmember-at-large from Queens County," ¶ 45; with "conspir[ing] among themselves to prevent the election of Plaintiff AARON WEISS to the public office of New York City Councilmember-at-large by unlawful means, and [acting on] this conspiracy," ¶ 46; and with, in acting "as officers and/or employees of New York City and/or New York State, in the course of their duties, caus[ing] the wrongful expenditure and misapplication of State and/or City funds and property, all to the damage of Plaintiffs and all other citizens and taxpayers in New York State." ¶ 47.

The case is now before the Court on dispositive motions by three groups of defendants. Defendants Calabretta and Gavrin have moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the amended complaint as against them. Defendants Feigenbaum, Rubin, Goldstein, Brick, Wiseberg, Memmen, Orlow, and Manes have moved pursuant to Rule 12(b)(1) and (6) to dismiss the amended complaint as against them. Finally, defendant Fink, who has answered, has made an application pursuant to Rule 12(c) for judgment in his favor on the pleadings.

Taking as true all of the complaint's well pleaded material facts,[1] *see, e.g., Eye Encounter, Inc. v. Contour Art, Ltd.,* 81 F.R.D. 683 (E.D.N.Y.1979), a description of the parties, together with the activities in which they are alleged to have engaged, to the extent relevant to these motions, is set forth below.

Plaintiffs include Aaron Weiss, "a candidate for the position of New York City Councilmember-at-large from Queens County in the Democratic primary election originally scheduled for September 10, 1981, and now postponed indefinitely," ¶ 5, and three of Weiss' campaign workers, who are alleged to be "members of a class of at least 12,088 citizen-taxpayers of the City and State of New York who indicated their desire to have Plaintiff WEISS be the Democratic Party nominee for the office of New York City Councilmember-at-large for Queens County for the term commencing January 1, 1982." ¶ 6.

The defendants are described in the pleadings as follows: Feigenbaum is alleged to be the Law Chairman of the Queens County Democratic Organization ("QCDO") and Counsel to the Public Administrator of Queens County; Memmen is the Public Administrator of Queens County; Rubin, Goldstein, and Brick are said to be patronage employees of defendant Stanley Fink, New York State Assembly Speaker; Fink is also alleged to be responsible for the hiring, retention, and payment of all em-

---

1.  Plaintiffs' Brief in Opposition to the Motion to Dismiss of Defendants Feigenbaum, Rubin, Goldstein, Brick, Wiseberg, Memmen, Orlow, and Manes includes a thirty-page recitation of the facts. To the extent that this summary introduces facts that were not included in the complaint, they have not been considered, since the case is before me on motions to dismiss and a motion for judgment on the pleadings, which, by their nature, are addressed to the face of the complaint—and, in the case of the motion for judgment on the pleadings, are addressed to the face of the pleadings. *See*

Federal Rules of Civil Procedure 12(b) and (c). Even if this were a motion for summary judgment, allowing me to consider matters outside the complaint, the factual allegations, as presented in the memorandum, would not be persuasive, since a motion for summary judgment cannot be defeated "by factual assertions in the brief of the party opposing it, inasmuch as documents of this character are self-serving and are not probative evidence of the existence or nonexistence of any factual issue." 10 Wright and Miller, *Federal Practice and Procedure* § 2723, at 489.

ployees of the Assembly; Calabretta is a Justice of the Supreme Court of the State of New York, Queens County, who from August 10 through 17, 1981, presided over the trial of *Wiseberg v. Weiss;* Gavrin is Justice Calabretta's law secretary who from August 10 through 19, 1981, served as a referee in connection with the trial of *Wiseberg v. Weiss;* Wiseberg is alleged to be the daughter of an employee of Feigenbaum, the lawyer who instituted the *Wiseberg v. Weiss* suit; Orlow is the incumbent Democratic New York City Councilmember-at-large from Queens County who was seeking renomination at the September 10, 1981 Democratic primary in opposition to plaintiff Weiss; Manes is the Chairman of the Executive Committee of the ACDO and is Borough President of Queens County; Bass, Richards, Black, Diaz, Gargiulo, Lumetta, Previte, Sachs, Sadowski, and Sclafani are Commissioners of the New York City Board of Elections; D'Amico is an official of the Board who is assigned to its Queens office and is the Treasurer of the QCDO; and Posner is an official of the Board who is assigned to its Queens office.

According to the complaint, in July 1981 plaintiff Weiss, in order to obtain a place on the Democratic Party ballot for the September 10, 1981 primary election for the position of New York City Councilmember-at-large from Queens County, filed nominating petitions with the Board. The petitions contained 12,088 signatures. In order to secure a place on the ballot, Weiss, like all other candidates, was required to submit 5,000 valid signatures. On August 5, the defendant Commissioners of the Board ruled that 5,487 signatures were invalid and that the remaining 6,578 [2] signatures were valid, thus placing Weiss on the ballot.

Shortly after the Board issued its ruling, Orlow, through his nominee, Wiseberg, and by his attorneys, Feigenbaum, Rubin, Goldstein, and Brick, commenced an action against Weiss in New York State Supreme Court, Queens County, namely *Wiseberg v.*

*Weiss,* Index # 11189/81, seeking to reverse the Board's decision. Also in August, Weiss instituted two other actions, *Weiss v. Wiseberg,* Index # 11140/81, seeking to restore the 5,487 signatures that had been invalidated, and *Weiss v. Orlow,* Index # 11141/81, seeking to reverse the decision of the Board designating incumbent Orlow as a candidate for the same public office, in the same primary, for which Weiss was running. The three actions were joined for trial before Justice Calabretta on August 10, 1981. Justice Calabretta ruled that, although Weiss' two actions were filed first, the *Wiseberg v. Weiss* case would be tried first.

The trial commenced on August 10, 1981. Feigenbaum, Rubin, Goldstein, and Brick subpoenaed 233 of Weiss' supporters as trial witnesses and are alleged to have refused to set a schedule for testimony of these witnesses. Justice Calabretta ruled that no such schedule was necessary. On August 14, after plaintiffs discovered that Justice Calabretta had signed Orlow's nominating petition, they commenced the instant action by order to show cause seeking to have the state proceedings in the case of *Wiseberg v. Weiss,* along with the related and joined cases, stayed on the ground that Justice Calabretta and Gavrin, his law secretary, were not impartial judicial officers.

On August 17, 1982, this application to stay the proceedings in the state courts was denied by Judge Nickerson of this Court on the ground that the remedy lay in the state court system. On the same date Justice Calabretta recused himself from the three state cases, and Justice Hyman took over the trial of the three actions. Gavrin, who had been appointed Special Referee in the cases by Justice Calabretta, is alleged to have continued in that capacity until August 19. Gavrin is additionally alleged to be the wife of George Heymann, the elected Secretary of the Eastern Queens Regular Democratic Club, an organization that is

---

**2.** These numbers are taken from the complaint, although it should be noted that they do not add up to 12,088. The total number of signatures, as computed by adding the number of signatures that were invalidated and the number of those that were deemed valid, equals 12,065, twenty-three short of the total number of signatures plaintiffs assert were collected.

said to have voted and pledged itself to support Orlow. On August 25 Justice Hyman ruled plaintiff Weiss off the ballot and ruled that his case against Orlow would be dismissed without any evidence being heard because Weiss no longer had standing as an "aggrieved candidate," in order to maintain the action. On August 26, the last day for an appeal of the three state cases, plaintiff Weiss appealed to the Supreme Court, Appellate Division, Second Department. The Appellate Division refused to consider the appeal because Weiss had not provided a complete transcript of the proceedings below. To have done so, Weiss alleges, would have cost in excess of $10,000, payable in advance. On September 1, the New York State Court of Appeals denied Weiss' application for leave to appeal the ruling below.

In addition to the involvement of the defendants recited above, plaintiffs have alleged certain other facts relevant to the pending motions. Memmen is alleged to have provided money, office space, telephone, and other services, paid for by the City or State of New York or by the estates of various Queens County citizens, for the purpose of enabling Feigenbaum to commence the state lawsuit. Fink is alleged to have continued Rubin, Goldstein, and Brick on the New York State Assembly payroll during the months of July and August, when the Assembly was out of session, for the purpose of financing the *Wiseberg v. Weiss* suit. Justice Calabretta and Gavrin, while sitting as judge and referee, respectively, in the state cases, are alleged to have deliberately failed to disclose their support for Orlow. Posner, who is alleged to have secured Justice Calabretta's signature on Orlow's nominating petition, is also alleged to have failed to disclose her support for Orlow, although she allegedly participated in preparing the Board's ruling on Weiss' nominating petitions and in refereeing *Wiseberg v. Weiss.* The defendant Commissioners, as well as Posner's supervisor, D'Amico, are alleged to have allowed Posner to participate in partisan political activity while employed as referee and judge of the nominating petitions of her candidate's political opponent. D'Amico is also alleged

to have deliberately assigned Posner to work on the Weiss and Orlow nominating petitions, knowing that she was a partisan of Orlow. Finally, Feigenbaum, Rubin, Orlow, and Manes are alleged to have orchestrated and directed the alleged conspiracy.

The parties agree that the primary election, which was scheduled for September 10, 1981, was enjoined by a three-judge panel in *Herron v. Koch,* 523 F.Supp. 167 (E.D.N.Y., S.D.N.Y.), *stay denied,* 453 U.S. 946, 102 S.Ct. 893, 69 L.Ed.2d 1032 (1981), and that as of yet it has not been held. The City's existing plan of electing two "at-large" councilmembers from each of the City's counties was struck down by Judge Neaher in November, *see Andrews v. Koch,* 528 F.Supp. 246 (E.D.N.Y.1981), *aff'd sub nom. Giacobbe v. Andrews,* —— U.S. ——, 103 S.Ct. 32, 74 L.Ed.2d 46 (1982), as violating the "one person, one vote" principle. In that decision, Judge Neaher held that the plan had to be replaced with "an electoral plan which accords due recognition to the population differences among the boroughs." 528 F.Supp. at 252. The decision was affirmed by the Supreme Court in October, and no new plan for the "at-large" positions has been approved.

### Defendants Calabretta and Gavrin's Motion to Dismiss

Defendants Calabretta and Gavrin argue that the complaint should be dismissed as against them because they are absolutely immune from suit for damages and because, even if they were not immune, the complaint fails to state a claim against them, since it nowhere alleges that either defendant caused any plaintiff any harm cognizable in a civil rights action.

In opposition, plaintiffs argue that Justice Calabretta and Gavrin are not immune from suit because they lacked jurisdiction over the state action. As to this lack of jurisdiction, plaintiffs refer to N.Y. Judiciary Law § 251–a, which forbids a judge from appointing a confidential clerk or law secretary to a Justice of the Supreme Court as a referee, receiver or commissioner; to N.Y. Judiciary Law § 14, which prohibits a

judge from taking part in a case "in which he is interested"; and to Justice Calabretta's signature on the petition—"a public statement of support for defendant Orlow against plaintiff Weiss"—which renders him a "key potential witness." Plaintiffs' Brief in Opposition to Motion to Dismiss at 9. The actions for damages against Justice Calabretta and his law secretary, Darrell Gavrin, must be dismissed, however, since they are both absolutely immune from suit.

■ It is a well established principle of law that judges, performing judicial acts, are absolutely immune from liability, even if the acts performed are done "in error . . . maliciously, or . . . in excess of [their] authority." *Stump v. Sparkman,* 435 U.S. 349, 356, 98 S.Ct. 1099, 1104, 55 L.Ed.2d 331 (1978). *See also Harlow v. Fitzgerald,* —— U.S. ——, ——, 102 S.Ct. 2727, 2731, 73 L.Ed.2d 396 (1982); *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Bradley v. Fisher,* 13 Wall. 335, 20 L.Ed. 646 (1872). The only exception to the doctrine of immunity is when a judge acts "in the 'clear absence of all jurisdiction.'" *Stump v. Sparkman, supra* 435 U.S. at 357, 98 S.Ct. at 1105, quoting *Bradley v. Fisher, supra* 13 Wall. at 351. While it is true that under New York law a judge must disqualify himself and thereby loses jurisdiction, *see, e.g., Wilcox v. Supreme Council Royal Arcanum,* 210 N.Y. 370, 104 N.E. 624 (1914), in any proceeding in which "he is a party, or in which he has been attorney or counsel, or in which he is interested, or if he is related by consanguinity or affinity to any party to the controversy within the sixth degree," N.Y. Judiciary Law § 14, the circumstances of this case do not suggest such a disqualification or lack of jurisdiction. The only impropriety alleged here involves Justice Calabretta's signing Orlow's petition. That action can be characterized as evidence of bias or prejudice. However, allegations of actual bias or prejudice of a judge do not establish the kind of interest mandating disqualification under § 14 of the Judiciary Law. *See, e.g., Katz v. Denzer,* 70 A.D.2d 548, 416 N.Y.S.2d 607 (App.Div., 1st Dept. 1979); *State Division of Human Rights v. Merchants Mutual Insurance Co.,* 59 A.D.2d 1054, 399 N.Y.S.2d 813 (App.Div., 4th Dept. 1977); *People v. Wallace,* 84 Misc.2d 619, 378 N.Y.S.2d 290 (Suffolk County Ct. 1975). Since there has been no showing that Justice Calabretta acted "in the clear absence of jurisdiction," he is protected by the doctrine of absolute immunity, and the action must be dismissed as against him.

■ Defendant Gavrin, who acted as referee in the *Wiseberg v. Weiss* action in state court, is entitled to the same protection accorded Justice Calabretta since "[i]mmunity which derives from judicial immunity may extend to persons other than a judge where performance of judicial acts or activity as an official aide of the judge is involved." *Henrikson v. Bentley,* 644 F.2d 852, 855 (10th Cir.1981). As stated by the Seventh Circuit in *Ashbrook v. Hoffman,* 617 F.2d 474, 476 (7th Cir.1980),

> "[t]he same policies which underlie the grant of absolute judicial immunity to judges justify the grant of immunity to those conducting activities intimately related to the judicial process. . . . On one hand is the policy that an official making quasi-judicial discretionary judgments should be free of the harassment of private litigation in making those judgments. . . . On the other hand a nonjudicial officer who is delegated judicial duties in aid of the court should not be a 'lightning rod for harassing litigation' aimed at the court. . . . Thus, if 'acts alleged to [be] wrongful were committed by the officer in the performance of an integral part of the judicial process,' *Robichaud v. Ronan,* 351 F.2d 533, 536 (9th Cir.1965), then the officer is absolutely immune from suit."

*See also Dennis v. Sparks,* 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980); *Gravel v. United States,* 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972). In considering the nature of the activities in which Gavrin is alleged to have engaged and the relationship of those activities to the judicial process, it is apparent that Gavrin's duties as referee were, in the language of the court in *Ashbrook v. Hoffman, supra,* "sufficient-

ly related to the judicial process to entitle [her] to quasi-judicial absolute immunity of [her] official acts."

■ That is not the end of the inquiry here, however, since defendant Gavrin, as Justice Calabretta's law secretary, arguably should not have served as referee in the state court action. Section 251–a of the New York Judiciary Law provides in relevant part:

"No person holding the office of confidential clerk of law secretary to a justice of the supreme court shall hereafter be appointed by any court or judge in any action or proceeding instituted in the supreme court, a referee, receiver or commissioner . . . ."

There is no indication in the complaint that Weiss had any objection to her acting in this capacity; [3] and, since such an objection is waivable, *see, e.g., Klein v. Klein's Outlet*, 268 App.Div. 27, 48 N.Y.S.2d 387 (App.Div. 1st Dept. 1944); *Fisher v. Fisher*, 223 App. Div. 19, 227 N.Y.S. 345 (App.Div. 1st Dept. 1929), it may well be that the right to have Gavrin disqualified as referee was waived. However, the very fact that objection to the appointment of Gavrin as referee may be waived makes clear that the provisions of § 251–a are not jurisdictional and, thus, that Gavrin, in serving as referee in the *Wiseberg v. Weiss* action, did not act without jurisdiction, but, at most, in excess of it. Since acting in excess of jurisdiction does not deprive one of immunity, *see, e.g., Stump v. Sparkman, supra* 435 U.S. at 357, n. 7, 98 S.Ct. at 1105, n. 7, citing *Bradley v. Fisher, supra* 13 Wall. at 352, defendant Gavrin is immune from suit, and the action against her must be dismissed as well.

### *Defendants Feigenbaum, Rubin, Goldstein, Brick, Wiseberg, Memmen, Orlow, and Manes' Motion to Dismiss*

The defendants listed above raise a number of arguments in support of their application to dismiss the complaint as against

them. The essence of their principal argument is that, since the election in which plaintiff sought to be a candidate was never held, the complaint does not present a justiciable case or controversy within the meaning of Article III of the Constitution. Defendants assert that plaintiffs lack standing because they have suffered no actual injury; that the controversy has become moot; and that, while the election in which plaintiff sought to run may, at some point, be held, it is at that time that plaintiffs should test these issues rather than in the present suit.

In addition, defendants contend that the amended complaint essentially alleges a claim of malicious use of civil process and that the claim is legally insufficient since plaintiffs cannot demonstrate that the prior judicial proceeding of which they complain terminated in their favor. Defendants also maintain that the claims against them must be dismissed because they are properly cognizable only under state law. In that context, they note that 42 U.S.C. § 1985(1) is inapposite, since it deals with conspiracies "to prevent . . . any person from accepting or holding any *office*, trust or place of confidence *under the United States*" (emphasis added), and that "section 1983 may not be used by aggrieved candidates for state office as a vehicle for bypassing the well-established principle that, under the federal system of government, state election matters are, ordinarily, to be resolved under state law by state courts."

Defendants further argue that plaintiff's state law claims must be dismissed because the federal claims do not have "substance sufficient to confer subject matter jurisdiction in the court"; because the allegations that form their basis fail to state a claim upon which relief can be granted; because state issues predominate; and finally, because federal courts, in determining the appropriateness of exercising pendent jurisdiction, should avoid needlessly deciding questions of state law.

---

**3.** The only objection to Gavrin serving as referee alleged was based on the fact that she is "the wife of George Heymann, the elected Secretary of the Eastern Queens Regular Democratic Club, an organization that has voted and pledged itself to support . . . ORLOW." Complaint ¶ 28.

Finally, defendants argue that, because plaintiffs' claims rest entirely upon an issue that was finally decided adversely to them in the state court, collateral estoppel mandates dismissal of the complaint.

Addressing each of defendants' arguments in the order set forth above, it does not appear "beyond doubt" that plaintiffs have failed to present a justiciable case or controversy within the meaning of Article III of the Constitution or that "plaintiff[s] can prove no set of facts in support of [their] claim[s] which would entitle [them] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). *See also Calhoun v. United States,* 475 F.Supp. 1 (S.D.Cal.1977), aff'd, 604 F.2d 647 (9th Cir.1979), *cert. denied,* 444 U.S. 1078, 100 S.Ct. 1029, 62 L.Ed.2d 761 (1980), in which it was noted that the standard set forth in *Conley v. Gibson, supra,* applies to motions challenging subject matter jurisdiction.

The judicial power of the federal courts depends upon the existence of a "case" or "controversy" within the meaning of Article III of the Constitution. *See, e.g., United States Parole Commission v. Geragherty,* 445 U.S. 388, 395–96, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980). Chief Justice Hughes defined the expression "case or controversy" as follows:

> "A 'controversy' in this sense must be one that is appropriate for judicial determination. A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."

*Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937) (citations omitted). Considering the three elements of justiciability that de-

fendants have brought into question—standing, ripeness, and mootness—I find that an Article III "case or controversy" has been sufficiently alleged to permit a hearing to be had on plaintiffs' claims.

The "gist of the question of standing" is whether the party seeking relief has "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination or difficult ... questions." *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). This "personal stake" has come to be defined as personal injury which has been caused by the challenged action of the defendants and which will be remedied if the court affords the relief requested. *See, e.g., Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976); *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Plaintiffs' allegations of deprivation of their constitutional rights are said to have occurred in part prior to the institution of this case and are not, as defendants argue, entirely dependent on the actual occurrence of the election. Such allegations of actual interference with one's rights to campaign for public office on one's own behalf and on behalf of others are sufficient to satisfy the standing requirements as expressed above.

The need for a controversy to be "ripe" in order to be justiciable requires, if an injury complained of has not yet occurred, that its occurrence must be fairly certain to occur in the future. *See, e.g., United Public Workers v. Mitchell,* 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947). In this case, because the injury complained of has, at least in part, already occurred and is not, as defendants maintain, entirely dependent on the holding of the election, the controversy is indeed "ripe" for adjudication.

Defendants also assert that this case is moot. The basis of the claim of "mootness" is that the primary election which is at the center of this litigation has

been stayed indefinitely. As already noted, there are allegations of past injury which suffice to make this case live. However, even if the damages for interference with one's rights to campaign for office were considered too nominal in nature to avoid mootness, when short-term conduct is "capable of repetition, yet evading review," the dispute remains viable despite an appearance of mootness. *See, e.g., Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 712, 35 L.Ed.2d 147 (1973); *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). Election cases have regularly been seen as falling within this exception, *see, e.g., Storer v. Brown,* 415 U.S. 724, 737, n. 8, 94 S.Ct. 1274, 1282, n. 8, 39 L.Ed.2d 714 (1974); *Moore v. Ogilvie,* 394 U.S. 814, 816, 89 S.Ct. 1493, 1494, 23 L.Ed.2d 1 (1969); *Shakman v. Democratic Organization of Cook County,* 435 F.2d 267, 268 (7th Cir.1970), *cert. denied,* 402 U.S. 909, 91 S.Ct. 1383, 28 L.Ed.2d 650 (1971). Here, the acts of which plaintiffs complain, if properly attributable to defendants, appear likely to recur because of their allegedly institutionalized nature and, given the short time frame of elections, appear likely to evade meaningful review.

Having determined that plaintiffs have presented a justiciable case, I consider next whether, as defendants assert, the application of the doctrine of collateral estoppel is appropriate. In order to gain the protection of this doctrine, the following general prerequisites must be established by the defendants: (1) The party against whom collateral estoppel is sought to be asserted must have been a party or in privity with a party to the prior action; (2) there must have been a final determination on the merits of the issue in the prior action; (3) the issue sought to be precluded must have been necessary, material, and essential to the outcome of the prior action; (4) the issue sought to be precluded must have been actually litigated in the prior action, with the party against whom collateral estoppel is sought to be asserted having had a full and fair opportunity to litigate; and (5) the issue decided in the prior action must be identical to the issue in the second

action. *See, e.g., Montana v. United States,* 440 U.S. 147, 153–55, 99 S.Ct. 970, 973–974, 59 L.Ed.2d 210 (1979); *GAF Corp. v. Eastman Kodak Co.,* 519 F.Supp. 1203, 1211 (S.D.N.Y.1981).

Even assuming that there is one key issue in this litigation and that it is the same issue as one that was determined adversely to plaintiff Weiss in the state court action—namely, plaintiff Weiss' right to appear on the primary ballot—I conclude that the doctrine of collateral estoppel cannot dispose of this case at this stage. This is so because of the "one general limitation the [Supreme] Court has repeatedly recognized . . .—that the concept of collateral estoppel cannot apply when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate that issue in the earlier case." *Allen v. McCurry,* 449 U.S. 90, 95, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). The amended complaint is replete with allegations of involvement of the judicial system in the commitment of the offenses charged, it can hardly be said with the degree of certainty required at this stage of the proceeding that the state courts provided plaintiffs with the full and fair opportunity to litigate to which they are entitled. Since the complaint fairly raises a factual question as to whether such an opportunity was presented plaintiffs in the earlier action, I cannot, at this stage of the litigation, conclude that plaintiffs' action is barred by the doctrine of collateral estoppel. As the Supreme Court recognized in *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971), "the requirement of determining whether the party against whom an estoppel is asserted had a full and fair opportunity to litigate is a most significant safeguard." *See also Parklane Hosiery Co.,* 439 U.S. 322 at 328, 99 S.Ct. 645, 650, 58 L.Ed.2d 552 (1979).

As to the plaintiff's federal civil rights claims it is well settled that a complaint alleging violations of civil rights should not be dismissed unless it appears to a certainty that the plaintiff is entitled to

no relief under a state of facts that could be proved in support of his claim. *See, e.g., Rubin v. O'Koren,* 621 F.2d 114, 117 (5th Cir.1980); *Escalera v. New York City Housing Authority,* 425 F.2d 853, 857 (2d Cir.), *cert. denied,* 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970). Consistent with this rule, the liberal construction of civil rights complaints is proper. *See, e.g., Rubin, supra.* Taking heed of these standards, I cannot now dismiss plaintiffs' civil rights claims.

▮▮▮▮ Although defendants are correct in stating that in most instances matters involving state court are to be resolved under state law by state courts, *see, e.g., Gamza v. Aguirre,* 619 F.2d 449 (5th Cir. 1980); *Powell v. Power,* 436 F.2d 84 (2d Cir.1970), there are circumstances where federal court intervention is appropriate. Such circumstances, while they do not include situations involving alleged administrative errors in state court proceedings, *see, e.g., Powell, supra,* or mechanical or human errors, *see, e.g., Gamza, supra; Hennings v. Grafton,* 523 F.2d 861 (7th Cir. 1975), lacking allegations of invidious or fraudulent intent, do cover the various forms of "wilful conduct which undermines the organic process by which candidates are elected." *Hennings, supra* at 864. As the First Circuit noted in *Griffin v. Burns,* 570 F.2d 1065, 1077 (1st Cir.1978), "[t]he right to vote remains, at bottom, a federally protected right. If the election process itself reaches the point of patent and fundamental unfairness, a violation of the due process

clause may be indicated and relief under § 1983 therefore in order." Considering the allegations contained in plaintiffs' amended complaint, it is plain that they do contain an element of intentional or purposeful violation of plaintiffs' constitutional rights, as well as the other elements necessary to make out claims under both 42 U.S.C. § 1983 and 1985(3).[4] Accordingly, I conclude that plaintiffs have justified their resort to federal court with respect to both of their civil rights claims[5] and reject defendants' argument that plaintiffs have failed to set forth a legally sufficient claim.[6] *See also Smith v. Cherry,* 489 F.2d 1098 (7th Cir.1973), *cert. denied,* 417 U.S. 910, 94 S.Ct. 2607, 41 L.Ed.2d 214 (1974).

▮▮▮ Finally, plaintiffs' federal claims have sufficient substance to confer subject matter jurisdiction on the Court, a prerequisite to the exercise of pendent jurisdiction, *see, e.g., United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Those claims are, in other words, not so insubstantial as to be frivolous. *See, e.g., Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). Because state issues do not substantially predominate in this litigation because the exercise of pendent jurisdiction will not require needless decisions of state law, *see, e.g., United Mine Workers, supra,* and because all of plaintiffs' claims derive from a common nucleus of fact, pendent jurisdiction is appropriately exercised over plaintiffs' state law claims.

4. It is plain from the nature of the allegations that plaintiffs intended to sue under § 1983 and 1985(3), and that the reference to § 1985(1) is either a typographical error or otherwise appropriately amended to assert a claim under the cited section.

5. Even if that were not the case, I would be unable to dismiss these claims since all of the cases recognize that the state courts are the proper province for state election disputes *only* "where adequate state corrective procedures exist." *Griffin, supra* at 1077. Since here the persons responsible for the "state corrective procedures" are alleged to be *themselves* participants in the alleged civil rights deprivations, I could not say with the requisite certainty at this stage of the proceedings that plaintiffs

have been provided with a fully adequate state corrective process.

6. Since plaintiffs have set forth actionable claims under § 1983 and § 1985(3), I reject defendants' argument that plaintiffs' claim is simply one for malicious prosecution and that, as such, it is legally insufficient because the state court action was not terminated in Weiss' favor. Because of plaintiffs' allegations concerning the involvement of the judiciary, there is more involved than a claim for malicious use of civil prosecution; and also, because of those allegations, a requirement that the prior judicial proceeding of which plaintiffs complain be terminated in their favor would make little sense.

**277**

Accordingly, the motion of defendants Feigenbaum, Rubin, Goldstein, Brick, Wiseberg, Memmen, Orlow, and Manes, their motion to dismiss must be denied in its entirety.

*Defendant Fink's Motion for Judgment on the Pleadings*

Defendant Fink, having already answered, has joined in the arguments made by his co-defendants by means of a motion for judgment on the pleadings. For the reasons set forth above, this motion must also be denied.

In summary, defendants' motions to dismiss and for judgment on the pleadings are denied in their entirety.

The Clerk is directed to mail a copy of the within to all parties.

SO ORDERED.