Carl ANDREWS, et al., Plaintiffs,

v.

Edward I. KOCH, et al., Defendants,

and

Albert Boyce, et al.,
Intervenors-Defendants.

Melville HERRON, Plaintiff,

v.

Edward I. KOCH, et al., Defendants.

Nos. 81 CV 2542 (ERN), 81 CV 1956 (ERN).

United States District Court,
E.D. New York.

Jan. 13, 1983.

LeBoeuf, Lamb, Leiby & MacRae, by Kim Hoyt Sperduto, Gwenellen P. Janov, Blaine G. LeCesne, New York City, for plaintiff Andrews, et al.

Agostino Dias Reis, New York City, for plaintiff Herron.

Frederick A.O. Schwarz, Jr., Corp. Counsel, City of New York by Judith A. Levitt, Susan R. Rosenberg, James F.X. Hiler, New York City, for defendants.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Plaintiffs in No. 81 CV 2542 and the plaintiff in No. 81 CV 1956, as clearly prevailing parties in those actions, have applied for an award of attorneys' fees, including costs and disbursements, as provided in 42 U.S.C. §§ 1973*l*(e) and 1988. The defendants have taken no position on these applications, although they have filed a memorandum vigorously opposing any award of fees to attorneys representing Gilberto Gerena-Valentin, et al., and/or the Puerto Rican Legal Defense & Education Fund, Inc., which latter organization had been granted permission to appear herein as *amicus curiae*. Since the Court is of opinion that any such application should be presented to the United States District Court for the Southern District of New York where the *Gerena-Valentin* action was instituted, this decision will be confined to the *Andrews* and *Herron* applications.

There can be no doubt that the *Andrews* plaintiffs achieved significant protections for the constitutional rights of New York City voters through the diligent and effective efforts of their attorneys. Those attorneys, the firm of LeBoeuf, Lamb, Leiby & MacRae, acting primarily through Kim Hoyt Sperduto, Esq., spearheaded the presentation of plaintiffs' claims on two fronts with completely successful results in both the lower courts and the United States Supreme Court. The *Andrews* plaintiffs brought about the consolidation of their action with the pending *Herron* and *Gerena-Valentin* actions for purposes of a three-judge court hearing to remedy a violation of § 5 of the Voting Rights Act, 42 U.S.C. § 1973c. Plaintiffs were successful in obtaining an injunction which barred New York City officials from proceeding with a primary election on the basis of an electoral reapportionment plan for which "preclearance" had not been given by the United States Attorney General. On defendants' immediate appeal to the Supreme Court, seven Justices refused to stay the injunction. See *Herron v. Koch*, 523 F.Supp. 167 (E.D.N.Y., S.D.N.Y.), *cert. denied*, 453 U.S. 946, 102 S.Ct. 893, 69 L.Ed.2d 1032 (1981).

On the second front, on plaintiffs' motion for summary judgment, this Court ruled that the election of ten at-large members of the City Council as mandated by the City Charter violated the one person-one vote rule of the Fourteenth Amendment. On defendants' appeal the ruling was affirmed by the Court of Appeals and thereafter by the Supreme Court. See *Andrews v. Koch*, 528 F.Supp. 246 (E.D.N.Y.1981), *aff'd on opinion below*, 688 F.2d 815 (2d Cir.1982), *aff'd sub nom. Giacobbe v. Andrews*, —— U.S. ——, 103 S.Ct. 32, 74 L.Ed.2d 46 (1982). The further election of such council members was thereafter enjoined pending a study by a Charter Revision Commission appointed by the Mayor.

The foregoing is but a bare outline of the accomplishments of these attorneys as reflected in the several court decisions referred to and in the docket sheet entries from the date of the filing of the complaint on August 5, 1981 until October 1982. Mr. Sperduto, on behalf of his firm and plaintiffs, has filed affidavits of himself and the three associate attorneys and one summer associate who assisted him. These detail the type of work, the hours or fractions thereof each attorney expended, the normal hourly rate of billing to clients, and the total value of the services. Mr. Sperduto began work on the *Andrews* case on July 2, 1981, and continued through October 5, 1982, a period of some fifteen months. As is also current practice, the services of paralegals were utilized at lower hourly rates to conserve attorney time and reduce billings. Considering the time pressures in-

volved in these cases, the hours expended were not unreasonable.

■ In the Second Circuit, the appropriate method of computing attorneys' fees is the "lodestar" method. To determine the proper amount of award:

"[F]irst, the court should establish a 'lodestar' figure, obtained 'by multiplying the number of hours expended by each attorney involved in each type of work on the case by the hourly rate normally charged for similar work by attorneys of like skill in the area.' *City of Detroit v. Grinnell Corp. ("Grinnell II"),* 560 F.2d 1093, 1098 (2d Cir.1977). Next, the court may adjust the lodestar figure upward or downward to take account of such subjective factors as the risk and complexity of the litigation and the quality of the representation."

*Cohen v. West Haven Bd. of Police Com'rs,* 638 F.2d 496, 505 (2d Cir.1980).

■ Based upon the total hours expended and the hourly rates normally charged, the final "lodestar" amount for hours reasonably spent by these attorneys and for paralegal services is $132,327.84, which includes disbursements in the amount of $7,856.79, and 4½ hours expended by two senior litigating partners of the LeBoeuf firm in advising Mr. Sperduto during the course of the litigation. Mr. Sperduto's hourly billing rate is $95; Ms. Janov's, $100; Mr. LeCesne's, $90; Mr. Abate's, $60; and Mr. Turetsky's, a summer associate during the period involved (now a full-time associate), $50. In light of current billing practices of law firms, the aforementioned hourly rates impress the Court as eminently reasonable.

According to the *Cohen* court's two-step procedure, after the lodestar is obtained, "[n]ext, the court may adjust the lodestar figure upward or downward to take account of such subjective factors as the risk and complexity of the litigation and the quality of the representation." 638 F.2d 496 at 505.

The applicant attorneys point out that "the risk and complexity of the litigation," *Cohen, supra,* 638 F.2d at 505, or "the con-tingent nature of success," *Copeland v. Marshall,* 641 F.2d 880, 892 (D.C.Cir.1980), warrant an adjustment in the lodestar "to compensate for the risk that the lawsuit would be unsuccessful and that no fee at all would be obtained." *Id.* They maintain that the injunction order was extraordinarily improbable in view of the reluctance of courts to enjoin elections at the eleventh hour. Also, plaintiffs point out, their counsel was the only one to assert that violations of Section 5 of the Voting Rights Act are *per se* irreparable injuries. They note, too, that weighing against the probability of success was the fact that the Department of Justice approves 98% of all changes submitted to it. See Slawsky, "A Local Government's Guide to Section 5 of the Voting Rights Act," 12 Urb.Law. 700, 705 n. 25 (1980). Finally, they point out that the Attorney General objected to the specific changes which plaintiffs had challenged.

Plaintiffs also urge that their prospects for success were also doubtful with respect to their attack against the election of at-large council members. The precise issue had previously been decided otherwise by a three-judge court in *Blaikie v. Wagner,* 258 F.Supp. 364 (S.D.N.Y.1965). Thus, plaintiffs were required to convince the courts to overrule a binding legal precedent.

There can be little doubt here that the quality of representation was an important factor in the success achieved in the litigation. This is all the more so, when defendants were represented by three of the City's most respected attorneys, namely, the former Corporation Counsel, Allen G. Schwartz, Esq., his successor, Frederick A.O. Schwarz, Jr., Esq., and Edward N. Costikyan, Esq., of Paul, Weiss, Rifkind, Wharton & Garrison, a firm of national prominence, well known for its litigation expertise.

In *Ross v. Saltmarsh,* 521 F.Supp. 753 (S.D.N.Y.1981), a lodestar increment of 25% was awarded to attorneys employed by a publicly funded legal services organization whose "lodestar" billings, based in part on reconstructed records, totalled $222,163.40. The lodestar "bonus" added some $55,540 to

**1102**

those fees. Although the case extended over six years, it appears that some of that time was created by changes of lead attorneys, career changes and other obstacles to continuity in the handling of the case. This case was prosecuted promptly by attorneys who stayed with it and performed services of considerable value to the public in the public interest. In the Court's opinion a lodestar increment of 25% is clearly justified.

Accordingly, the attorneys for the *Andrews* plaintiffs are awarded attorney's fees in the amount of $155,588.81 and $7,856.79 for reimbursement of expenses.

No fees are awarded to the attorney for plaintiff Herron in No. 81 CV 1956 since his attorney performed no services of value to the prosecution of this case.

SO ORDERED.

The Clerk of Court is directed to forward copies of this Memorandum and Order to counsel for the parties.