739 F.2d 755
 Gilberto GERENA-VALENTIN, in his former capacity as New York
City Councilman and, individually, as an eligible voter, and
on behalf of all Puerto Ricans and other Hispanic voters in
New York similarly situated, Plaintiffs-Appellants,
v.
Edward I. KOCH, as Mayor of the City of New York, City of
New York, Thomas Cuite, as majority Leader and Vice
Chairman, and the Chairman of the Committee on Rules
Privileges and Elections of the Council of the City of New
York, Council of the City of New York, Melvin Markus, as
Chairman of the Redistricting Commission appointed by the
Council of the City of New York, Board of Elections of the
City of New York, Stanley Schlein, Attorney, Office of the
Majority Leader, the Council of the City of New York,
Stanley Friedman, as Chairman of the Executive Committee of
the Democratic County Committee of Bronx County, Defendants-Appellees.
 No. 890, Docket 83-7808.
 United States Court of Appeals,
Second Circuit.
 Submitted March 2, 1984.
Decided July 3, 1984.
 
 Gabe Kaimowitz, Juan Cartagena, Jack John Olivero, President & General Counsel, Puerto Rican Legal Defense & Educ. Fund, Inc., New York City, for plaintiffs-appellants.
 Edward F.X. Hart, Leonard Koerner, Frederick A.O. Schwarz, Jr., Corp. Counsel of the City of New York, New York City, for Municipal defendants-appellees.
 Paul A. Victor, New York City, for defendants-appellees Friedman and Schlein.
 Before KAUFMAN, OAKES and WINTER, Circuit Judges.
 WINTER, Circuit Judge:
 Gilberto Gerena-Valentin appeals from Judge Duffy's order denying his motion for attorney's fees under the Voting Rights Act, 42 U.S.C. Sec. 1973l (e) and awarding attorney's fees to defendants Friedman and Schlein under the Attorney's Fees Awards Act, 42 U.S.C. Sec. 1988. We affirm.
 BACKGROUND
 This appeal arises out of a challenge under the Voting Rights Act, 42 U.S.C. Sec. 1973 et seq., to New York City's 1981 redistricting plan. The plan, based on the 1980 census, redrew council district lines, thereby changing 300 of the City's 3000 election districts. The plan increased the number of council seats from 33 to 35 while retaining two at-large council seats for each of the City's five boroughs. However, the City failed to preclear the plan with the Justice Department even though preclearance was required under the Voting Rights Act. 42 U.S.C. Sec. 1973c.
 On June 12, 1981, the City submitted its plan to the Justice Department and asked for an expedited review. On June 16, one Melville Herron commenced an action in the Eastern District of New York challenging the redistricting plan under the Voting Rights Act. He sought to enjoin elections under the plan on the ground that the City had not received preclearance of the proposed changes. Injunctive relief was denied at that time as premature since the City still had ample opportunity to obtain preclearance from the Justice Department prior to the September 10, 1981 primary election. Candidates for the new council seats were allowed to petition for a place on the ballot as of June 16.
 On August 4, 1981, the Justice Department informed the City that it would need additional information before it could determine whether or not the redistricting plan constituted a violation of Section 5 of the Voting Rights Act. On August 5, 1981, a second suit, Andrews v. Koch, was commenced in the Eastern District of New York by three Brooklyn voters, at least one of whom was Hispanic. The plaintiffs in Andrews alleged that the City's redistricting plan discriminated against minority voters and that the allotment of two at-large council seats for each of the five boroughs violated the constitutional rights of voters in the larger boroughs. The Andrews plaintiffs sought a declaratory judgment and permanent injunctive relief. On September 1, 1981, an amended complaint was filed in Herron v. Koch, which again sought to enjoin the primary and general election until preclearance was obtained from the Justice Department.
 
 
 1
 On September 2, 1981, Gerena-Valentin, an incumbent Councilman from the Bronx, commenced the instant action in the Southern District of New York. Gerena-Valentin brought his suit as a class action on behalf of New York City's Puerto Rican and other Hispanic voters and alleged that the City had violated Sections 5 and 4(e) of the Voting Rights Act, 42 U.S.C. Secs. 1973c and b(e), by failing to preclear the redistricting plan and to provide adequate bilingual assistance to Hispanic voters. Gerena-Valentin's Section 5 claims were virtually identical to the claims asserted in Herron's amended complaint. By the time Gerena-Valentin filed his complaint, the City had conceded in Andrews v. Koch that the plan was subject to Section 5 of the Voting Rights Act and that preclearance could not be obtained before the primary election. Gerena-Valentin nevertheless sought to enjoin the primary election and general election pending preclearance.
 
 
 2
 In separate counts, Gerena-Valentin's complaint also alleged that Stanley Friedman, Chairman of the Bronx Democratic County Executive Committee, and Stanley Schlein, an attorney for the majority leader of the New York City Council, had conspired with the municipal defendants to cause Gerena-Valentin's name to be kept off the ballot in retaliation for his advocacy of his constituents' voting rights. These allegations arose out of state court litigation to which neither Friedman nor Schlein were parties but which resulted in the exclusion of Gerena-Valentin's name from the ballot on grounds suggestive of fraud in submitting petitions of registered voters. As relief, he sought an injunction requiring that his name be placed on the ballot. Gerena-Valentin was represented throughout by the Puerto Rican Legal Defense and Education Fund ("PRLDEF").
 
 
 3
 On the day Gerena-Valentin filed his complaint, Herron succeeded in persuading Judge Neaher to grant his motion to convene a three-judge district court under the Voting Rights Act. Gerena-Valentin's counsel assisted Herron's counsel in securing the order to convene a three-judge panel. On the same day, Judge Duffy separately requested a three-judge court in response to Gerena-Valentin's complaint. Andrews' counsel had not yet sought a three-judge panel. On September 3, Chief Judge Feinberg of the Court of Appeals designated a three-judge panel consisting of Judges Kearse, Neaher and Duffy to decide those aspects of Herron, Andrews and Gerena-Valentin arising under Section 5 of the Voting Rights Act. Gerena-Valentin's claims against Friedman and Schlein and his claims under Section 4(e) relating to bilingual assistance were thus severed.
 
 
 4
 On September 8, the three-judge court heard argument on the motion for a preliminary injunction. Paul Wooten, Herron's counsel, argued first and developed the case for granting the preliminary injunction. Gabe Kaimowitz, a PRLDEF lawyer representing Gerena-Valentin, argued that the City had not notified Hispanic voters in Spanish as to their new polling stations or election districts and that this omission was part of a long history of failure by the City to provide adequate bilingual assistance to Hispanic voters. Kaimowitz's arguments thus largely supported Gerena-Valentin's claim under Section 4(e) of the Voting Rights Act, which had already been severed. However, he did suggest that Hispanic voters might be irreparably injured if the primary election, then only two days away, were not enjoined. Kim Sperduto, Andrews' counsel, argued last and challenged the council elections and the failure to obtain preclearance.
 
 
 5
 The three-judge district court enjoined the September 10th primary. Herron v. Koch, 523 F.Supp. 167 (E.D.N.Y. & S.D.N.Y. Sept. 8, 1981) (per curiam). The court's opinion referred to and resolved Gerena-Valentin's Section 5 claim along with Herron's and Andrews' claims. The opinion neither discussed nor relied on any theories argued by Kaimowitz. On September 9th, Messrs. Wooten, Kaimowitz and Sperduto all opposed the City's motion for a stay of the injunction before Justice Marshall, who denied the stay.
 
 
 6
 On October 27, 1981, the Justice Department notified the City of its objections to the redistricting plan, and two days later, Gerena-Valentin's action relating to the redistricting was transferred to the suspense docket. Thereafter, PRLDEF continued to lobby the Justice Department and the City for changes in the redistricting plan. In June, 1982, a redistricting plan was finally precleared under which the at-large seats challenged in Andrews were abolished. This resulted in the termination of the litigation under Section 5.
 
 
 7
 On January 13, 1981, Judge Neaher awarded over $160,000 in fees and expenses to Andrews' counsel. 554 F.Supp. 1099. He declined to award fees to Herron's counsel on the grounds that "his attorney performed no services of value to the prosecution of this case." Id. at 1102. Meanwhile, on September 9, 1981, Judge Duffy held a hearing on the remaining counts of Gerena-Valentin's complaint, including the claims against Friedman and Schlein and the claims relating to bilingual assistance under Section 4(e) of the Voting Rights Act. Friedman and Schlein defended with affidavits and a copy of a state referee's report recommending that Gerena-Valentin be kept off the ballot. Gerena-Valentin offered only argument of counsel in support of his claim. Judge Duffy declined to order the City to place Gerena-Valentin's name on the ballot and dismissed counts 2 through 6 of Gerena-Valentin's complaint. Gerena-Valentin v. Koch, 523 F.Supp. 176 (S.D.N.Y.1981). In that opinion, Judge Duffy noted that Gerena-Valentin was removed from the ballot after 4,616 out of 5,860 signatures on his petition were invalidated by the Board of Elections in circumstances suggestive of election fraud. Id. at 177.
 
 
 8
 On July 29, 1982, PRLDEF moved for attorney's fees solely for its prosecution of Gerena-Valentin's Section 5 claim. Judge Duffy denied the motion after applying the two-part test set forth in our decision in Kerr v. Quinn, 692 F.2d 875, 877-78 (2d Cir.1982). Judge Duffy found that Gerena-Valentin was "a late comer to this litigation and not a moving force behind the issuance of the injunction." Gerena-Valentin v. Koch, 554 F.Supp. 1017, 1020 (S.D.N.Y.1983). Accordingly, he held that Gerena-Valentin need not "be compensated along with the catalysts." Id.
 
 
 9
 Judge Duffy granted attorney's fees to defendants Friedman and Schlein under 42 U.S.C. Sec. 1988 on the grounds that Gerena-Valentin's complaint as to them had "no basis in law or fact." 554 F.Supp. at 1021.
 
 
 10
 This appeal followed.
 
 DISCUSSION
 
 11
 1. Gerena-Valentin's motion for attorney's fees
 
 
 12
 Gerena-Valentin bases his claim for attorney's fees on his role in obtaining the injunction of September 8, 1981 and on his lobbying efforts in the Justice Department to alter the proposed redistricting plan. Based on Judge Duffy's findings, we conclude that Gerena-Valentin is not entitled to an award of attorney's fees on either ground.
 
 
 13
 Attorney's fees are available under the Voting Rights Act to the prevailing party in any "action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment." 42 U.S.C. Sec. 1973l (e). See Newman v. Piggie Park Enterprises, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968) (per curiam). To justify an award of such fees, the prevailing party must show a causal connection between the relief obtained and the litigation in which fees are sought. Williams v. Leatherbury, 672 F.2d 549, 550-51 (5th Cir.1982); Nadeau v. Helgemoe, 581 F.2d 275, 281 (1st Cir.1978). A causal connection exists if the plaintiff's lawsuit was "a catalytic, necessary, or substantial factor in attaining the relief." Commissioners Court of Medina County, Texas v. United States, 683 F.2d 435, 440 (D.C.Cir.1982). The inquiry into causality is largely factual, Posada v. Lamb County, Texas, 716 F.2d 1066, 1072 (5th Cir.1983), and the findings of a district court on these matters will be set aside only if clearly erroneous. Pullman-Standard v. Swint, 456 U.S. 273, 293, 102 S.Ct. 1781, 1792, 72 L.Ed.2d 66 (1982); United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). In cases where several parties seek similar relief, the district court will normally be in the best position to determine whether a particular lawsuit was a "significant catalyst" in bringing about the relief sought.
 
 
 14
 In the instant controversy, an injunction did issue against the City's redistricting plan and the plan was substantially modified. Judge Duffy, however, concluded in effect that Gerena-Valentin's efforts were not a catalytic or substantial factor behind these favorable results. The judge found as a fact that Gerena-Valentin's complaint "merely aped the model provided [weeks earlier] by Herron and Andrews." Gerena-Valentin v. Koch, 554 F.Supp. at 1020. In addition, Gerena-Valentin's counsel made no appreciable contribution at oral argument on the motion for a preliminary injunction.
 
 
 15
 We cannot say that Judge Duffy's decision was clearly erroneous.[1] While there is no first-in-time rule governing the award of counsel fees where multiple litigation is brought, a duplicative action which contributes virtually nothing to the ultimate result cannot justify an award of counsel fees. The purpose of such awards is to "encourage the redress of civil rights violations." Coop v. City of South Bend, 635 F.2d 652, 655 (7th Cir.1980). Where that goal is fully achieved by a single well-managed action, an award of compensation to latecomers who add nothing of value would encourage the bringing of superfluous litigation solely for an award of fees.
 
 
 16
 Since Gerena-Valentin's role was limited to the bringing of a repetitive action and the offering of inconsequential legal arguments in seeking an injunction, it was not error to deny counsel fees. Gerena-Valentin's counsel asserts that he worked extensively with Herron's counsel in preparing the amended complaint and motion for injunctive relief in Herron v. Koch. If so, and if the Herron litigation was a catalytic factor leading to the favorable results, Gerena-Valentin's counsel would have been entitled to fees in that action. However, Judge Neaher denied an award to Herron's counsel because they "performed no services of value to the prosecution of this case." 554 F.Supp. at 1102.
 
 
 17
 Gerena-Valentin also argues that he is entitled to an award of attorney's fees as a consequence of his lobbying efforts in the Justice Department to alter the proposed redistricting plan. The issue raised is not whether such lobbying can be compensated under Section 1973l (e) where it is in direct aid of litigation which independently supports an award of fees. Arguably, where the initiation of litigation is necessary to compel defendants to obtain preclearance before holding an election, lobbying efforts in a preclearance review might bring the litigation to a quick and successful end, a goal consistent with the statutory purpose of Section 1973l (e). In the instant case, however, Judge Duffy found Gerena-Valentin's lawsuit to be superfluous, and the issue before us is thus whether fees are available solely for Gerena-Valentin's lobbying efforts in a preclearance review, a question yet undecided by any court. See Posada v. Lamb County, Texas, 716 F.2d at 1074-75.
 
 
 18
 Our analysis begins with the statutory language. Section 1973l (e) of the Voting Rights Act provides that "In any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court ... may allow the prevailing party ... a reasonable attorney's fee." The word "proceeding" is used throughout the Voting Rights Act interchangeably with the word "action" in contexts plainly indicating an intent to refer to litigation, e.g., Sec. 1973c (referring to actions for declaratory judgments as "proceedings"); Sec. 1973j (f) (referring to certain actions by the Attorney General for providing relief and to criminal actions under the Act as "proceedings"); Sec. 1973l (referring to actions for declaratory judgments as "proceedings"); compare New York Gaslight Club, Inc. v. Carey, 447 U.S. 54, 61, 100 S.Ct. 2024, 2029, 64 L.Ed.2d 723 (1980). There is thus little or no textual warrant for a construction of the fee awards provision which applies it to lobbying in preclearance reviews not in aid of catalytic litigation.
 
 
 19
 The legislative history also contains no suggestion that awards of attorney's fees can be made for work solely in connection with preclearance reviews. We set out in the margin portions of the abundant legislative history indicating that the purpose of counsel fee awards under Section 1973l (e) was to encourage meritorious litigation.[2] No indication of an intent to award fees for efforts in a preclearance review can be found in that history.
 
 
 20
 This case differs from New York Gaslight Club, Inc. v. Carey, supra (attorney's fees awarded under 42 U.S.C. Sec. 2000e-5(k) for time spent in certain administrative proceedings necessary to the litigation). In New York Gaslight, the plaintiff was required by statute to exhaust state and local administrative remedies before resorting to litigation. Compensation for time spent exhausting those remedies was thus appropriate. In the instant case, however, as in Blow v. Lascaris, 523 F.Supp. 913 (N.D.N.Y.1981), aff'd, 668 F.2d 670 (2d Cir.1982) (per curiam), no such statutory exhaustion requirement exists. We therefore conclude that Gerena-Valentin is not entitled to an award of fees for work done in the preclearance review.
 
 
 21
 2. Friedman and Schlein's cross motions for attorney's fees
 
 
 22
 Judge Duffy awarded Friedman and Schlein, prevailing defendants, attorney's fees under 42 U.S.C. Sec. 1988 on the grounds that Gerena-Valentin's complaint as to them had "no basis in law or fact," at 1021. The general rule is that, in the absence of a statutory provision authorizing the award of attorney's fees to defendants, such fees may be awarded only upon a showing of improper purpose or bad faith, as well as lack of merit. PRC Harris, Inc. v. Boeing Co., 700 F.2d 894, 898 (2d Cir.1983). However, defendants in civil rights cases are entitled to fees under Section 1988 upon a showing that the complaint is frivolous without regard to the state of mind of either the plaintiff or his or her counsel. Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). This is such a case.
 
 
 23
 The complaint against Friedman and Schlein arose out of a matter which had already been litigated through the Appellate Division in New York at the time this complaint was filed in the federal court. In the course of the state proceedings, Gerena-Valentin had been excluded from the ballot upon an invalidation of thousands of signatures and a showing of conduct in collecting and presenting signatures suggestive of fraud. Defendants submitted the opinion filed by the Special Referee of the Bronx County Supreme Court, which had been adopted by that court and affirmed by the Appellate Division. They also submitted affidavits from Friedman and Schlein denying any coordination with the Board of Elections or retaliatory motive against Gerena-Valentin. In addition, Friedman's affidavit presented evidence that Gerena-Valentin had not been singled out and that numerous other candidates, some of whom are not Hispanic, were also challenged. Gerena-Valentin's complaint in the instant case alleged only that the state court proceedings had been brought in retaliation for Gerena-Valentin's advocacy of his constituents' voting rights. At no time, either in the hearing on Gerena-Valentin's motion for preliminary injunctive relief or in response to the cross motion for attorney's fees, did Gerena-Valentin attempt to produce any evidence whatsoever in support of his retaliation and conspiracy claim. Indeed, he did not even allege, much less swear, that the signatures were validly obtained. Finally, since no claim for damages was made in the complaint, the naming of Friedman and Schlein, who are in no position to place Gerena-Valentin on the ballot, as defendants seems utterly groundless. In view of his failure to make any showing of evidentiary support for his claim, which, in light of the litigation in the state courts, seems wholly improbable, Judge Duffy's finding that Gerena-Valentin's action against Friedman and Schlein lacked an objective basis is not clearly erroneous. We therefore affirm the award of fees to defendants Friedman and Schlein.
 
 
 24
 Affirmed.
 
 
 
 [1]
 In his analysis of this case Judge Duffy wrongly relied on the two-step test we set forth in Kerr v. Quinn, supra. That test should only be applied to suits for damages and not to suits for equitable or declaratory relief. The application of the first step, whether counsel might be easily retained on a contingency basis because of the high likelihood of a substantial damage award, to actions for injunctions cases would always preclude a court from considering the second step, whether a fee award would be unjust
 
 
 [2]
 The most revealing expression of Congress' intent in adopting Section 1973l (e) is the Senate Report since the text of the Senate bill was the one ultimately enacted. The following statements in the Report indicate that Section 1973l (e) was intended to provide fees and costs relating to litigation:
 [Section 1973l (e) ] allows a court, in its discretion, to award attorneys' fees to a prevailing party in suits to enforce the voting guarangees of the Fourteenth and Fifteenth Amendments.
 S.Rep. No. 295, 94th Cong., 1st Sess. 40 (1975), reprinted in [1975] U.S.Code Cong. & Ad.News 774, 807 (emphasis added).
 "[P]rivate attorneys' general" should not be deterred from bringing meritorious actions ... by the prospect of having to pay their opponent's counsel fees .... However, such a party, if unsuccessful, should be assessed his opponent's fee where ... his suit was frivolous, vexatious, or brought for harassment purposes .... These provisions thus deter frivolous suits by authorizing an award of attorney's fees against a party shown to have litigated in "bad faith" ....
 Id. at 807 (emphasis added).
 In appropriate circumstances, counsel fees ... may be awarded pendente lite.... Such awards are especially appropriate where a party has prevailed on an important matter in the course of litigation....
 Id. at 808 (emphasis added).
 The Senate Report also indicates that fees should be awarded under Section 1973l (e) by the standards used under the 1964 Civil Rights Act. 42 U.S.C. Sec. 2000a-3(b) and Sec. 2000e-5(k). Id. at 807-808. That Act and Section 1973l (e) and the more recently adopted Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. Sec. 1988, all contain virtually identical statutory language. The legislative history to both Section 1973l (e) and Section 1988 indicate that they were intended to create consistency in fee award standards in civil rights cases. 1975 U.S.Code Cong. & Ad.News at 809-10; S.Rep. No. 1011, 94th Cong., 2d Sess. 1-4 (1976), reprinted in [1976] U.S.Code Cong. & Ad.News 5908-12. The legislative history of each Act is thus relevant to the construction of the others.
 Nothing in the legislative history of Section 1988 suggests that Congress contemplated fee awards for work done in administrative proceedings unrelated to successful litigation. A contrary intent is indicated by the following excerpts from the Senate and House Reports:
 The purpose and effect of [Sec. 1988] are simple--it is designed to allow courts to provide the familiar remedy of reasonable counsel fees to prevailing parties in suits to enforce the civil rights acts which Congress has passed since 1866....
 Id. at 5909-10 (emphasis added).
 In many cases arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer. If private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court.
 Id. at 5910 (emphasis added).
 Enforcement of the laws depends on governmental action and, in some cases, on private action through the courts. If the cost of private enforcement actions becomes too great, there will be no private enforcement. If our civil rights are not to become mere hollow pronouncements which the average citizen cannot enforce, we must maintain the traditionally effective remedy of fee shifting in these cases.
 Id. at 5913 (emphasis added).
 In many instances where [the civil rights] laws are violated, it is necessary for the citizen to initiate court action to correct the illegality ... Because a vast majority of the victims of civil rights violations cannot afford legal counsel, they are unable to present their cases to the courts .... [Sec. 1988 is designed] to give [plaintiffs] effective access to the judicial process.
 H.R.Rep. No. 1558, 94th Cong., 2d Sess. at 1 (1976).