Patricia **TENNEY** and Harrel S. **Tenney II, Plaintiffs,**

v.

**Wallace C. BEDELL, M.D., and Martin C. Koloski, M.D., and Surgical Group of Poughkeepsie, P.C., and Vassar Brothers Hospital, Defendants.**

**No. 84 Civ. 7645(RWS).**

United States District Court, S.D. New York.

Dec. 11, 1985.

Ayre, Kors & Lustig, P.C., New York City, for plaintiffs; Kenneth N. Rashbaum, of counsel.

Martin, Clearwater & Bell, New York City, for defendants Dr. Bedell and Koloski and Surgical Group of Poughkeepsie; John L.A. Lyddane, Lisa L. Crupi, of counsel.

Hart & Hume, New York City, for defendant Vassar Brothers Hospital; Leslie F. Ruff, of counsel.

SWEET, District Judge.

Both plaintiffs, Patricia Tenney and Harrel S. Tenney II (the "Tenneys") and defendants Wallace C. Bedell, M.D. ("Dr. Bedell") have moved pursuant to Rules 50 and 59(e) to set aside the jury verdict and judgment in favor of the Tenneys for $210,016.00 rendered on September 4, 1985. Defendant Vassar Brothers Hospital (the "Hospital") as to which a directed verdict was granted, has moved for costs including attorney's fees. The motions were submitted on October 1, 1985, and for the reasons set forth below all motions are denied except for the motion of the Hospital.

The action arose from a course of medical treatment to Mrs. Tenney administered by Drs. Bedell and Martin G. Koloski ("Dr. Koloski") during March and April, 1983, in the course of which Dr. Koloski performed a hemorrhoidectomy. Dr. Bedell performed a sphincterotomy, and the Hospital provided medical care. At the close of the Tenneys' case the action against the Hospital was dismissed. In its Special Verdict the jury found no malpractice was committed by either doctor but that Dr. Bedell failed to provide sufficient informtion to the Tenneys with respect to the dilation and sphincterotomy treatment and, therefore, found Dr. Bedell liable for failure to obtain informed consent. Damages of $140,031 for lost earnings, and $280,000 for pain and suffering were found, as well as contributory negligence in the amount of 50% on the part of the Tenneys.

The Tenneys seek to set aside the findings of contributory negligence made against them for a failure of causation, while Dr. Bedell seeks to set aside the judgment based on lack of informed consent. For the purpose of these motions, it is assumed that the Tenneys did not comprehend the fact that incontinence of stool could be a complication of surgical efforts to relax the spasms of her internal sphincter, when Mrs. Tenney consented to surgery on April 6, 1983. The testimony of Drs. Bedell, Bauer and Kesseler all established that advice should have been given to the patient of the possibility of fecal incontinence following a sphincterotomy. Although the question is close, their testimony in its totality added up to expert testimony in support of the alleged qualitative insufficiency of the consent as required by New York C.P.L.R. § 4401–a. The question of the content of the advice given, of course, was factual and resolved against Dr. Bedell.

Further, there was testimony from Dr. Bauer from which the jury could have concluded that Mrs. Tenney could have decided to defer the sphincterotomy if aware of the risk of fecal incontinence. As the dilation turned out, such a delay would have subjected her to an additional hospitalization and pain, but that there was sufficient expert evidence before the jury on which they could conclude that the consent would not have been given had all the risks been known. The Special Verdict against Dr. Bedell will not be set aside.

■ As to the negligence of the Tenneys, there was evidence relating to her post-operative conduct, including the delay in seeking medical assistance and the course of her recovery once that assistance was obtained, from which the jury could conclude that the Tenneys failed to use due care in seeking treatment and in complying with the instructions for care given to her and that such negligence was a factor causing the damages she suffered. The chronology of events and subsequent treatment was sufficient to supply evidence of increased damages resulting from the Tenneys' conduct, even absent expert testimony on the subject. The finding of the jury with respect to contributory negligence will not be set aside.

■ The Hospital has moved for its costs in appearing at trial. No evidence was ever presented against the Hospital. The Tenneys, however, maintain pretrial dismissal was not appropriate because the doctor defendants might have sought, when called in the plaintiffs' case, to avoid liability by attributing the Tenneys' damages to the Hospital. This asserted reason for prosecuting this case is contradicted by the circumstances of this action.

The doctor defendants had not cross-claimed against the Hospital, nor did the Hospital cross-claim against them. Neither of the physicians was an employee of the Hospital, and, therefore, independent liability had to be established against the Hospital. With the exception of members of its nursing staff, no employee of the Hospital rendered any kind of care or treatment to Mrs. Tenney during either of her two admissions in the Hospital. All of the physicians in the operating room during each surgical procedure were independent contractors, and there was no claim of liability as against the Hospital as a result of any act or omission of a physician-employee. The testimony developed during pretrial discovery, including the depositions of the doctors, did not establish or indicate any culpable actions on the part of Hospital employees. On June 19, 1985, two months before the trial, the Tenneys, after responding to a Rule 26 interrogatory, confirmed that they would present no expert testimony against the Hospital. Yet, despite the complete absence of a factual basis for its purported claim against the Hospital, the Tenneys refused to discontinue this aspect of the action. At trial, Tenneys' counsel stated in his opening that he intended to demonstrate that the Hospital was negligently responsible for Mrs. Tenney's injuries, but again no evidence was introduced.

The Court of Appeals has recently stated the standards guiding this court's "inherent equitable powers" to grant attorney's fees under the bad faith exception to the American Rule requiring each party to bear its own fees, and that test is met here. *See Sierra Club v. Army Corps of Engineers,* 776 F.2d 383 (2d Cir.1985). While the action against the Hospital was not frivolous at its inception, the action was entirely without merit after June 19, 1985 at which time the Tenneys confirmed that they would present no expert testimony against the Hospital. Moreover, the Tenneys' refusal to discontinue their action after being confronted with this lack of evidence indicates careless and vexatious behavior which amounts to an "improper purpose." *See Sierra Club, supra,* at 390. *See also Nemeroff v. Abelson,* 620 F.2d 339, 350–51 (1980). The circumstances indicate that the Tenneys maintained this action, not to protect themselves but rather to include before the jury an additional defendant. Such a multiplicity of defendants, of course, creates the risk of a prejudicial effect upon the proceedings. Since the conjunctive standard of meritlessness and improper purpose has been met, an award of attorney's fees is proper in this case.

The Hospital is entitled to recover its legal fees of $6,625.00 and disbursements of $135.85 incurred subsequent to June 19, 1985. The Hospital's request for fees is adequately supported by contemporaneous time records, and no objections were presented by the Tenneys. The hourly rate of $100 per hour appears very reasonable

for work by attorneys in this legal community. *See Andrews v. Koch*, 554 F.Supp. 1099, 1101 (E.D.N.Y.1983) ($90 to $100 hourly rates); *Plaskow v. Peabody International Corp.*, 95 F.R.D. 297, 298 (S.D.N.Y.1982) ($125 to $175 per hour rates).

The motions of the Tenneys' and Dr. Bedell to set aside the verdict are denied and the motion of the Hospital for attorneys' fees and costs is granted.

IT IS SO ORDERED.